UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | No. 11 B 23399 |
| | ) | |
| Carl P. Amari, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Media House Productions, Inc., | ) | No. 12 A 00979 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Carl P. Amari, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS
AMENDED ADVERSARY COMPLAINT**

This Adversary Proceeding relates to the bankruptcy petition filed by debtor Carl P. Amari ("Defendant') under Chapter 7 of the Bankruptcy Code. Debtor received his discharge on March 2, 2012. Plaintiff Media House Productions ("Plaintiff") filed its original complaint (Dkt. 1) on June 13, 2012 and filed an amended complaint with leave of court on September 20, 2012 (Dkt. 15). Count I of the Amended Complaint requests that debts allegedly due Plaintiff from Defendant be held non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A). Count II seeks to have the debt allegedly due Plaintiff held nondischargeable under 11 U.S.C. § 523(a)(4). Count III seeks the same relief under  11 U.S.C. §523(a)(6). In Count IV, Plaintiff requests that discharge be revoked under 11 U.S.C. § 727(d).

Defendant filed its Motion to Dismiss on July 24, 2012. It argues that (1) jurisdiction is lacking because the proceeding was filed after the time given to object to  discharge or dischargeability and (2) the Amended Complaint fails to state a claim for relief. The Motion also

1

seeks to have stricken from the Amended Complaint Plaintiff's request to impose a constructive

trust on certain profits of an LLC managed by Defendant.

## Jurisdiction

Jurisdiction lies under 28 U.S.C. §§ 157 and 1334. This matter has been referred here by

Internal Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28

U.S.C. § 157(b)(2)(I).

## Background

Plaintiff, Media House Productions, Inc. ("Plaintiff") is an Illinois corporation in the

business of digital/audio media production and editing. Defendant was the manager and a

member of Falcon Picture Group, LLC ("Falcon Picture"), an Illinois limited liability company.

Falcon Picture is a producer, developer, and distributor of audio, video, and DVD consumer

products for sale through retail, mail order, and direct marketing channels of distribution. At

some time in October 2009, Falcon Picture began production of an audio book based on certain

books of the Catholic New Testament, later called the "Truth & Life Dramatized Audio Bible"

("Audio Bible"). At that time, Defendant allegedly contacted Plaintiff to request its services to

help produce the Audio Bible. Plaintiff and Defendant entered into an Agreement whereby

Plaintiff agreed to provide cash and services in exchange for a percent of revenue received from

sales of the Audio Bible. Defendant filed his voluntary bankruptcy petition under Chapter 7 of

the Bankruptcy Code on June 1, 2011.

## DISCUSSION

### I. Request for Dismissal Based Upon Lack of Jurisdiction

Defendant argues pursuant to Fed. R. Bankr. P. 4007 that the last day to object to the

dischargeability of a debt under § 523(a) of the Bankruptcy Code or to discharge under § 727 of

the Code was September 12, 2011. Plaintiff filed its Adversary Complaint nine months later on

June 13, 2012. The time to file an objection to dischargeability of debt under § 523(a)(2)(A) and

(a)(6) is ordinarily no later than 60 days after the first date set for the meeting of creditors under

11 U.S.C. § 341(a). Fed. R. Bankr. P. 4007(c). Debtor's first meeting of creditors took place on

July 13, 2011. (11 B 23399, Dkt. No. 8) The last day to object under Rule 4007 would have been

mid-September. A Seventh Circuit Opinion has ruled that the 60-day time limit under Fed. R.

Bankr. P. 4007 for filing objections to dischargeabilty of certain debts is not jurisdictional and is

subject to equitable defenses. *In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002). Plaintiff's

defense asserted to Defendant's Rule 4007 challenge relies on failure to schedule Plaintiff as a

creditor in his bankruptcy case with result that it received no notice of and didn't learn of the

bankruptcy case until the end of December 2011, more than three months after the usual

deadline.

Plaintiff argues that, even though it failed to file its Complaint within the time frame set

by Fed. R. Bankr. P. 4007(c), it may nevertheless object to dischargeability of debts allegedly

owed it by virtue of 11 U.S.C. § 523(a)(3)(B):

> (a) A discharge under section 727 . . . of this title does not discharge an individual
> debtor from any debt —
>
>> (3) neither listed nor scheduled under 521(a)(1) of this title, with the name,
>> if known to the debtor, of the creditor to whom such debt is owed, in time
>> to permit —
>>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6)
>>> of this subsection, timely filing of a proof of claim and timely
>>> request for a determination of dischargeability of such debt under
>>> one of such paragraphs, unless such creditor had notice or actual
>>> knowledge of the case in time for such timely filing and request . .
>>> . ."

Thus, when a debtor does not schedule debts so as to give creditors notice of the

bankruptcy and time to permit filing of a proof of claim or dischargeability complaint, those

debts are not discharged unless the creditor had notice or actual knowledge of the debtor's

bankruptcy case.  A precondition for nondischargeability of debts of the kind specified in

523(a)(3) is that the debts also be nondischargeable under subsections (a)(2), (a)(4), or (a)(6).

3

The penalty to debtor for failure to schedule such debts is not nondischargeability but instead it is loss of the 60-day limitation period that applies under Fed. R. Bankr. P. 4007. Therefore, a complaint to bar dischargeability may be considered timely even if filed after the deadline set by Rule 4007(c) if the creditor did not have notice or actual knowledge of the bankruptcy case in time to file a timely request for determination of dischargeability. *Bletinksy v. Jairath (In re Jaraith)*, 259 B.R. 304, 314 (Bankr. N.D. Ill. 2001) (Schmetterer, J.) (citing, *inter alia*, *In re Dewalt*, 961 F.2d 848 (9th Cir. 1992).

Plaintiff alleges that Defendant induced it to invest money and services based on false representations, misappropriated funds that belonged to Plaintiff, and willfully and maliciously caused harm to Plaintiff by failing to make capital contributions to the "Audio Bible Project." It therefore argues that the debt owed it by Defendant is of the kind specified in subsections (2) and (6) of Section 523(a), which are pleaded as grounds in Counts I and II.

Defendant argues Plaintiff has not provided in its Complaint a factual basis for proceeding under § 523(a)(3)(B). In their briefs on the Motion to Dismiss, Defendant and Plaintiff focus on when the alleged fraud was discovered by Plaintiff. That is not the only relevant inquiry. Rather, it must be determined first when the Plaintiff received notice of or learned of Defendant's bankruptcy case. In its original Complaint, Plaintiff does not state by what date it learned of the bankruptcy. However, in its Amended Complaint, Plaintiff states that it learned of Defendant's bankruptcy case sometime during the last week of December 2011, three months after the usual deadline and six months before the initial Adversary Complaint was filed.

As noted above, the 60-day time limit for filing objections under Fed. R. Bankr. P. 4007 is not jurisdictional but is subject to equitable defenses, such as laches. *In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002). Plaintiff explains, both in its original and Amended Complaint, how and when it learned of the alleged fraud, arguing that even if it had known of Defendant's bankruptcy filing it could not have filed a complaint until it was aware of the alleged fraud. (Compl. ¶ 26; Am. Compl. ¶ 40–41) According to Plaintiff, it did not know it had a cause of

action until its receipt of certain financial documents on April 2, 2012, two months before this

Adversary was filed.

Rule 4007, which governs complaints under § 523(a)(3)(B) allows for filing of such

complaints at any time. *Diepholz v. Zahlmann (In re Diepholz)*, BAP No. AZ-11-1581-DJuHL,

2012 Bankr. LEXIS 4718, *17 (B.A.P. 9th Cir. Oct. 4, 2012). However, there is authority

requiring determination of the reasonableness or appropriateness of a delay in filing of a

complaint after receipt of actual notice of a debtor's bankruptcy filing. *Id.* at *30. In *In re*

*Dewalt*, a Ninth Circuit Opinion stated that upon learning of a bankruptcy filing, an unscheduled

creditor should have time to review the merits of filing a nondischargeability complaint so as to

file such a complaint only if justified. 961 F.2d 848, 851 (9th Cir. 1992) In considering how

much time is necessary for such decision, *Dewalt* looked to Rule 4007(c), which directs courts to

give scheduled creditors at least 30 days notice of the impending bar date. *Id. Dewalt* also noted

that scheduled creditors will have notice of the bankruptcy filing long before the 30-day notice of

the bar date has been received. *Id.* The Opinion cited *Collier on Bankruptcy* for the proposition

that "in most cases, creditors actually receive at least 80 days notice of the deadline for filing

dischargeability complaints." *Id.* (quoting *Collier on Bankruptcy* ¶ 4007.05[2] (15th ed. 1991)).

The Opinion concluded that the 30-day notice provision of Rule 4007(c) provides a guide to the

minimum time within which it is reasonable to expect a creditor to file a complaint or risk

default. *Id.* It also opined that, "[i]n no event, however, could the reasonable time period

contemplated by section 523(a)(3)(B) be greater than the 80 days advance notice a properly

scheduled creditor will ordinarily receive." *Id.* n.4. *Dewalt* recognized that 30-days notice may

not be enough time in cases of extraordinary circumstances but that it may be more than enough

in other cases. *Id.* at 851. Therefore, some analysis is required here to determine whether filing

by Plaintiff of its Complaint six months after learning of the Defendant's bankruptcy was

reasonable.

Plaintiff argues that it did not become aware of the need to file the Complaint until April

2, 2012, when it received certain financial records from Defendant. Those documents, Plaintiff

contends, show that distributions made by Falcon Picture to Plaintiff and others were incorrect.

In its Amended Complaint, Plaintiff relies in part for its claims on these documents to prove

fraud by the Defendant. In light of those pleadings, and subject to evidence at trial, Plaintiff's

filing of its Complaint two months later was not unreasonable and well below the 80-days

scheduled creditors typically receive.

The purpose of § 523(a)(3)(B) is to allow determination of dischargeability that would

otherwise be time barred under Fed. R. Civ. P. 4007. *Waugh v. Eldridge (In re Waugh)*, 172 B.R.

31, 34 (Bankr. E.D. Ark. 1994). Therefore, the Counts challenging dischargeability of debts

cannot be dismissed on the basis that Plaintiff failed to object to dischargeability within the time

period prescribed by Fed. R. Bankr. P. 4007.

Finally, Defendant did not challenge the timeliness of Plaintiff's Count IV, brought under

11 U.S.C. § 727(d)(1) and (2) to revoke Defendant's discharge. That section provides:

> (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
>> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
>> (2) under subsection (d)(2) or (d)(3) of this section before the later of—
>>> (A) one year after the granting of such discharge; and
>>> (B) the date the case is closed.

Defendant received his discharge on March 2, 2012. Plaintiff's request for revocation of

discharge was made within one year of this date as its complaint was filed on June 13, 2012 and

is therefore timely. In addition, Defendant's bankruptcy case has not been closed, therefore any

action under § 727(d)(2) is not untimely. *See* 11 U.S.C. § 727(e)(2)(B).

**II: Request for Dismissal for Failure to State a Claim**

Standard for Dismissal Under Fed. R. Bankr. P. 7012(b)

Fed. R. Civ. P. 12(b)(6) is incorporated by reference in Fed. R. Bankr. P. 7012. When

presented with a motion to dismiss for failure to state a claim, all well pleaded factual allegations

of the complaint are taken as true and all reasonable inferences drawn in favor of the plaintiff.

*Evans v. Lederle Laboratories*, 167 F.3d 1106, 1108 (7th Cir. 1999). A complaint may not be

dismissed if it contains allegations from which the trier may reasonably infer that evidence on

the necessary elements of proof will be adduced at trial. *Sidney S. Arts Co. v. Pipefitters Welfare*

6

*Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994). "Further, the court has a duty to consider whether a plaintiff's allegations could provide relief under any available legal theory." *Id.* The Complaint need not support a viable claim only under the particular legal theory specified by the plaintiff. *Id.* To survive a motion to dismiss, a plaintiff need not specify the correct legal theory if some theory is viable. *Cass v. Am. Properties, Inc.*, 861 F. Supp. 55, 57 (N.D. Ill. 1994). A plaintiff is not required to plead all facts or legal theories, cases or statutes, but must describe its claim briefly and simply. *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). However, sufficient facts must be pleaded to show a plausible case under some possible cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The foregoing generally permissive pleading requirements do not apply in cases alleging fraud. Allegations of fraud must be pleaded with particularity in conformance with Fed. R. Civ. P. 9(b) (made applicable in bankruptcy by Fed. R. Bankr. P. 7009). That rule requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . " A complaint alleging fraud must provide the "who, what, when, where, and how" of the alleged fraudulent action." *Borsellinoi v. Goldman Sachs Grp., Inc.*, 477 F.3d 503, 507 (7th Cir. 2007)

Plaintiffs Amended Complaint meets this standard. It details several alleged frauds perpetrated by Defendant in the course of his dealings with Plaintiff. The discussion of those allegations below are labeled as they are in Plaintiff's Amended Complaint. Each Count is brought under a particular statutory provision and is based on one or more of the alleged frauds.

Count I: Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)

Count I seeks to have a debt allegedly owed Plaintiff held nondischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523 provides in relevant part that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> > (2) for money, property, services . . . to the extent obtained
> by –
> > > (A) false pretenses, a false representation, or actual fraud . . . .

Each ground for excepting a debt from discharge under § 523(a)(2)(A) must be separately considered. *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 470 (Bankr. N.D. Ill.

2011). To except debts arising from false pretenses or false representation, a creditor must establish: (1) the debtor made a false representation of fact, a representation, (2) which the debtor (a) either knew was false or made with reckless disregard for the truth and (b) made with an intent to deceive, (3) upon which the creditor justifiably relied. *Ojeda v. Godberg*, 599 F.3d 712, 716 (7th Cir. 2010).

False pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression. *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996). False pretenses has been further defined as follows:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor . . . .

*Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996).

A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence. *Id.*

For purposes of section 523(a)(2)(A), a Seventh Circuit Opinion defined "fraud" as:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, and any unfair way by which another is cheated.

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000).

Plaintiff alleges that Defendant made several misrepresentations to it, thereby inducing Plaintiff to contribute cash in the amount of $125,000.00 and voice-over recording, audio editing, and audio mixing services worth $375,000.00. (*See* Am. Compl. ¶ 21) Plaintiff also alleges that Defendant perpetrated several frauds and obtained property of the Plaintiff by false pretenses. Each allegation is separately addressed below.

### 1. The "Cash Misrepresentation"

Plaintiff alleges Defendant represented to Plaintiff that he would be personally contributing $1 million in cash to Falcon Group Pictures to cover half the required budget. (Am. Compl. ¶ 15) Plaintiff further alleges that Defendant made these representations "as reflected in the Investor Document where it is written that 'Falcon Picture Group is investing $1mm, for 50% of the profit or approximately $4.61 per unit sold.'" (Id.) The "Investor Document" refers to "The Catholic New Testament Audio Bible Investor Information" (the "Investor Document") attached as an exhibit to Plaintiff's Amended Complaint. That document provides details on the proposed project, including a budget, and investment options. In addition to the Investor Document, Plaintiff attached to its Amended Complaint the "Catholic New Testament Investor Agreement." (the "Agreement") (Am. Compl. Ex. B) The Agreement was executed between Mediahouse Productions, LLC (Plaintiff) and Falcon Picture Group, LLC. (Id. at 1) Defendant signed the Agreement as CEO of Falcon Picture Group, LLC. (Id. at 5) Under that Agreement, Plaintiff is entitled to 25% of net sale revenues from the Audio Bible. (Id. at 2) In exchange, Plaintiff agreed to make a capital contribution and to provide services as described above. (Id. at 1) As recognized by Plaintiff, the Agreement provides that "[Falcon Picture Group] would contribute $1,000,000.00 in cash in exchange for 50% of the net sales revenue generated by the sales of the Audio Bible." (Am. Compl. ¶ 17)

Defendant argues that Plaintiff's Complaint "merges the identity of [Falcon Picture Group] and Carl. Based upon this merger of identity and despite the manner in which the Agreement contradicts its position, [Plaintiff] alleges that certain misstatement of facts were made that induced it into providing money and services to [Falcon Picture Group]." (Mot. ¶ 8) In asserting Plaintiff's Ex. B, Plaintiff recognized that it entered into that Agreement with Falcon Group. Defendant argues therefore that Plaintiff does not have a claim against him because Defendant was never identified in his personal capacity as pledging any investment to the

project. He further contends that Plaintiff remitted funds and services to Falcon Group and not to Defendant personally. Defendant reasons from the Agreement that he never agreed to contribute $1 million, but that Falcon Group did.

Plaintiff does not allege anywhere in its Amended Complaint that Defendant personally promised to make contribution. Rather, Plaintiff in several places treats Defendant as the same entity as Falcon Picture. In addition to the examples cited above, Plaintiff also alleges that "the Agreement provided that [Falcon Group], of which [Defendant] was the sole manager and member, would contribute $1,000,000.00 in cash towards the Audio Bible project." (Am. Compl. ¶ 20)

Plaintiff cannot simply treat Defendant and Falcon Group as one and the same. But Plaintiff counters in its Response to the Motion to Dismiss that it is entitled to sue Defendant by arguing "the law is well settled that corporate officers may be held personally liable for conversions by the corporation if they have actively participated therein." *In re Farbman*, 244 B.R. 135, 141 (Bankr. N.D. Ill. 2000) Indeed, "[u]nder Illinois law, corporate officers are personally liable for their own fraudulent conduct." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001). However, whether a debt allegedly owed by a debtor is dischargeable under the Bankruptcy Code is determined by federal bankruptcy law. *In re Weber*, 892 F.2d 534, 539 (7th Cir. 1990); Schubert *Osterrieder & Nickelson PLLC v. Bain (In re Bain)*, 436 B.R. 918, 921 (Bankr. S.D. Tex. Sept. 16, 2010).

Some cases were found wherein a bankruptcy judge permitted a similar principle to be applied against debtors to deny dischargeability of debts. For example, in *Kwasneski v. Williams (In re Williams)*, Adv. No. 10-05077, 2011 Bankr. LEXIS (Bankr. W.D. Tex. Jan. 24, 2011), the bankruptcy judge denied the debtors' motion for summary judgment in an adversary proceeding seeking nondischargeability of certain debts under 11 U.S.C. § 523(a)(2) and denial of discharge under 11 U.S.C. § 727. The debtors argued that the representations that formed the basis of the creditors' misrepresentation and fraud allegations were made by them on behalf of an LLC entity controlled by the debtor and not in their individual capacities. *Id.* at *1. The bankruptcy judge denied the motion to dismiss, holding that the Plaintiffs could proceed to hold the debtors liable

under a Texas law that in cases of misrepresentation or fraud a corporate agent may be held personally liable for his own misrepresentations. *Id.* at *9.

Other courts have rejected use of state law to determine dischargeability actions under the Bankruptcy Code, albeit under different circumstances. For example, in *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902 (11th Cir. 1985), in deciding an action under 11 U.S.C. § 523(a)(5), which excepts from discharge debts for domestic support obligation, one Eleventh Circuit Opinion explicitly ruled that state law does not determine whether such an obligation is dischargeable in bankruptcy. *Id.* at 905. The state law in that case did not require the type of support the debtor agreed to in an agreement made with his former wife upon their separation. *Id.* at 904–05. The *Harrell* Opinion, citing legislative history on the purpose of the exception at issue and the text of the statute itself, ruled that § 523(a)(5) was intended broadly to cover all types of domestic support obligations, not those defined as such under state law. *Id.*

Fraud, as defined in this Circuit, encompasses a variety of conduct intended to cheat another of their property. *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000). Such a broad definition can surely include use by an individual of a corporate form to defraud.

One of the purposes of the corporate form is to immunize corporate officers from individual liability on contracts entered into on the corporation's behalf. However, although an officer is not liable for the corporation's torts simply by virtue of his office, corporate officer status does not insulate an officer from individual liability for torts of the corporation in which he actively participates. *Nat'l Acceptance Co. of Am. v. Pintura Corp.*, 418 N.E.2d 1114, 1117 (App. Ct. Ill. 1981); *Accord McMillan v. Firestone (In re Firestone)*, 26 B.R. 706, 713 (Bankr. S.D. Fla. 1982) ("[A]n officer, director or shareholder of a corporation will not be shielded by the corporate from for liability a tort, including fraud, in which he himself is involved.") The rule is summarized in *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-409 (10th Cir. 1958):

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may be reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the

11

injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

In this case, the Amended Complaint sufficiently alleges that Defendant actively participated in a corporate scheme to defraud Plaintiff by inducing it to contribute cash and services to the company. Defendant holds a 75% membership interest in Falcon Picture Group and was its manager.

However, a question arises whether this only invoked a promise to contribute funds in the future. If the "Cash Misrepresentation" were proven, then it is argued that the debt allegedly owed Plaintiff will not be discharged under 11 U.S.C. § 523(a)(2)(A). To be actionable under 11 U.S.C. § 523, a representation must be of current or past facts. "A promise to act in the future is not a false representation . . . ." *In re Jacob*, Nos. 97 B 27010, 97 A 01644 1998 Bankr. LEXIS 368, at *11 (Bankr. N.D. Ill. Mar. 23, 1998) (Squires, J.) (citing *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1018 (Bankr. N.D. Ill. 1996); *O'Donnell v. Floyd (In re Floyd)*, 177 B.R. 985, 989 (Bankr. M.D. Fla. 1995); (*Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 393 (Bankr. N.D. Ill. 1994).

Under Illinois law, however, "promissory fraud, involving a false state of intent regarding future conduct, is generally not actionable . . . unless the plaintiff also proves the act was part of a scheme to defraud." *Ass'n Benefit Servs.m Inc. v. Caremark RX, Inc. et al.*, 493 F.3d 841, 853 (7th Cir. 2007). A "scheme to defraud" involves a "larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broadcasting Cos., Inc. et al.*, 44 F.3d 1345, 1354 (7th Cir. 1995). The reason for requiring proof of a scheme to defraud is that "[w]ithout such a high standard, every breach of contract claim might also constitute a claim for fraud." *Id.*

In this case, the scheme alleged involves several representations assertedly made to induce Plaintiff to supply cash and services to Falcon Group. The "Cash Misrepresentation" allegations sufficiently indicate a possible scheme to defraud Plaintiff by promising payments that were not intended to be made.

12

### 2. The "Group Representations"

Before Plaintiff agreed to invest in the Audio Bible project, Defendant allegedly made the following verbal representations:

(1) that Defendant was able to cover the entire budget for the Audio Bible project on his own, but was considering a "partner" to invest in the Audio Bible project;

(2) that a similar Protestant audio Bible project Defendant produced grossed over $20 million in sales by the end of 2009 and was therefore generating millions of dollars for him personally, and that the Audio Bible would be an even bigger opportunity;

(3) that he was producing numerous television, radio, and feature film products that made him, or was going to make him, a lot of money. (Am. Compl. ¶ 16(a)-(c)).

These were allegations of inaccurate oral statements of Defendant's financial condition. To be nondischargeable, misstatement of financial condition must be made in writing. *Blackwell v. Dabney*, 702 F.2d 490, 491(4th Cir. 1983). "[Section] 523(a)(2)(A), while barring discharge for money obtained by false pretenses, false representations or actual fraud, provides an exception where representations were 'statements[s] respecting the debtor's or an insiders' financial condition.' Such statements fall within the purview of 11 U.S.C. § 523(a)(2)(B) which expressly provides that the statements be written." *Id.* The Amended Complaint does not allege or attach a written statement by Defendant regarding his financial condition. However, the asserted oral statements referred to here may well be evidence relevant to the Plaintiff's assertion of a "scheme to defraud," and allegations pertaining thereto will not be dismissed.

### 3. The "Investor Document"

Plaintiff alleges that the Investor Document was a false representation made to induce it to provide cash and services. Plaintiff argues that when Defendant tendered the Investor Document, he "knew that he was not going to contribute $1,000,000.00 in cash to the Audio

Bible project because he did not have that amount of money at that time and was otherwise unable to obtain that amount of money." (Am. Compl. ¶ 54) If proven, Plaintiff may establish that the Document was part of a larger scheme to defraud it. Therefore, reference to it will not be dismissed.

### 4. The "Repayment Misrepresentation"

Plaintiff agreed to contribute an additional $25,000 in marketing services because Defendant allegedly promised Plaintiff that the contribution would be repaid to Plaintiff before any other payments were made. If proven, then discharge of that debt allegedly owed Plaintiff is asserted to be barred under 11 U.S.C. § 523(a)(2)(A).

As discussed above, this charge if it stood alone might be susceptible to dismissal as alleging "promissory fraud." However, this alleged representation appears to be asserted as part of an alleged scheme to defraud Plaintiff and evidence concerning it may be offered in support of that purported scheme.

### 5. The "Borrowing Fraud"

Defendant admitted to "borrowing" over $50,000 from commissions and royalties from sales of the Audio Bible product but assured Plaintiff that those sums would be reimbursed. (referred to by the Plaintiff as the "Borrowing Fraud"). (Am. Compl. ¶ 33) As a result of the borrowing, Plaintiff argues it was damaged because income that would have been distributed to Plaintiff was instead used to pay commissions and royalties. (Am. Compl. 64) Plaintiff argues that, if proven, the debt allegedly owed Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

This allegation alleges harm to the Falcon Picture Group, LLC, but not to Plaintiff. For this reason, this allegation standing alone might be actionable only if pleaded as a derivative action. *See generally Hulbert v. Cheeks (In re Cheeks)*, 467 B.R. 136, 146–47 (Bankr. N.D. Ill. 2012). Plaintiff states that it is not a shareholder of Falcon Picture Group and therefore cannot bring a derivative action on its behalf. (Response ¶ 32) Therefore, the Plaintiff does not have

standing to pursue this claim as a separate cause of action, though evidence concerning it may be relevant to the asserted fraudulent scheme and therefore this allegation is not dismissed.

### 6. The "Distribution Fraud"

The Amended Complaint alleges that "[Falcon Picture] was obligated to pay Plaintiff approximately $103,554.91 pursuant to the Agreement, but this payment was never received." (referred to by the Plaintiff as the "Distribution Fraud"). (Am. Compl. ¶ 42) According to Plaintiff, Defendant had sole control of money generated by sales of the Audio Bible. (*Id.* P 67) If proven, Plaintiff argues in Count I of its Amended Complaint that the debt allegedly owed Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(2)(A). However, it may be proven that the above harm was caused as part of Defendant's scheme to defraud Plaintiff so the allegation will not be dismissed.

### 7. The "Over-Distribution"

Plaintiff alleges that Defendant took a greater percentage of net revenue from sale of the Audio Bible than he should have received. According to Plaintiff, Defendant took 75% of net revenue and received $103,152.80 more than he was entitled to under the Agreement between the parties. (Am. Compl. ¶¶ 43, 45 and Ex. H) Plaintiff argues this constituted actual fraud and that the debt allegedly owed it is therefore not dischargeable under 11 U.S.C. § 523(a)(2)(A). The Motion to Dismiss this pleading will be denied.

### 8. The "2012 Distribution"

Similarly, Plaintiff alleges Defendant received a distribution in the amount of $6,000 for a period in which the Audio Bible grossed $37,207.75 in revenue. (Am. Compl. ¶ 46) Plaintiff alleges this constituted actual fraud and that the debt allegedly owed it is therefore not dischargeable under 11 U.S.C. § 523(a)(2)(A). If proven, Plaintiff argues that the debt allegedly owed it is not dischargeable under 11 U.S.C. § 523(a)(2)(A). This allegation will not be dismissed.

### 9. The "Salary Fraud"

Defendant allegedly paid to himself and his wife salaries not agreed to by Plaintiff (referred to by Plaintiff as the "Salary Fraud"). (Am. Compl. P 48) Plaintiff argues that, if proven, the debt allegedly owed it is not dischargeable under 11 U.S.C. § 523(a)(2)(A), (4), and (6).

The harms alleged were harms to Falcon Group Pictures, LLC and not to Plaintiff and as a stand-alone action should have brought derivatively. Plaintiff is not a shareholder of that entity and therefore does not have standing to do so. But once again, the evidence may be relevant to the alleged scheme to defraud and the pleading will not be dismissed.

Count II - Objection to Dischargeability under 11 U.S.C. § 523(a)(4).

Plaintiff alleges that the "Borrowing Fraud," the "Distribution Fraud," the "Over Distribution," the "2012 Distributions," and "Salary Fraud" (all as defined above) all constituted embezzlements nondischargeable under 11 U.S.C. § 523(a)(4). Defendant's Motion did not address this Count as it was filed prior to Plaintiff's Amended Complaint that added that Count. Nevertheless, some comment on the allegations may be useful to the parties.

Under § 523(a)(4), debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are excepted from discharge. Plaintiff has not alleged a fiduciary relationship. The term "acting in a fiduciary capacity" does not qualify the word "embezzlement" in § 523(a)(4), so any debt resulting from embezzlement falls within the exception. Collier ¶ 523.10[2]. Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Id.* Plaintiff has not shown in its Amended Complaint that it personally has its own claim against Defendant for embezzlement. To claim a debt nondischargeable under § 523(a)(4) on the basis of embezzlement a creditor must show that the property allegedly embezzled by a debtor was its property. *Martello v. Fowers (In re Fowers)*, 360 B.R. 888, 898 (Bankr. N.D. Ind. 2007). That was not pleaded; but at trial must be proven.

16

Count III – Objection to Dischargeability under 11 U.S.C. § 523(a)(6).

In its Amended Complaint, the Plaintiff alleges that "[Falcon Picture] was obligated to pay Plaintiff approximately $103,554.91 pursuant to the Agreement, but this payment was never received." (referred to by the Plaintiff as the "Distribution Fraud"). (Am. Compl. ¶ 42) According to Plaintiff, Defendant had sole control of money generated by sales of the Audio Bible. (*Id.* P 67)  If proven, Plaintiff argues in Count III of its Amended Complaint that the debt allegedly owed Plaintiff is not dischargeable under 11 U.S.C. § 523(a)(6).

Under § 523(a)(6), an individual debtor does not receive a discharge for any debt owed "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6).

Plaintiff relies in its Amended Complaint on the word "malice" in the statute. Plaintiff cites one Opinion for the proposition that "the term 'malicious' under § 523(a)(6) means in conscious disregard for one's duty or without just cause or excuse. *Bell Auto Leasing, Inc. v. Farbman (In re Farbman)*, 244 B.R. 135, 142 (Bankr. N.D. Ill. 2000). That Opinion relied on an Opinion from the Seventh Circuit, *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). The definition of "willful and malicious" in *Thirtyacre* was superseded by the definition set forth by the Supreme Court in *Kawaauhau v. Geiger. Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998); *Kingvision Pay Per View, Ltd. v. DeMarco (In re DeMarco)*, 240 B.R. 282, 289 (Bankr. N.D. Ill. 1999); *see also Bartlett v. Vaccaro (In re Vaccaro)*, Adv. No. 09 A 00476, 2010 Bankr. LEXIS 3589, *25 n.5 (Bankr. N.D. Ill. Oct. 14, 2010). In *Kawaauahu*, the Supreme Court clarified the meaning of "willful" in section 523(a)(6) by stating:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to an injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.'

*Kawaauhau*, 523 U.S. at 61.

17

The Seventh Circuit's most recent iteration of the standard under § 523(a)(6) states that "a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012). That Opinion construed "willful and malicious" as one term and did not provide differing definitions of each word in the statute. *Id.* at 322. Plaintiff cannot attempt to do so here.

Plaintiff does not allege any facts that show plausibly that Defendant intended to harm Plaintiff by failing to distribute profits allegedly due Plaintiff. Furthermore, § 523(a)(2) specifically covers torts based on fraud. Sections 523(a)(2) and (6) are mutually exclusive, meaning that debts arising from fraud are not dischargeable only under § 523(a)(2). *See Jendusa-Nicolai*, 677 F.3d at 322; *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 671–72 (Bankr. N.D. Ill. 2010). Therefore, Count III will be dismissed.

Count IV – Revocation of Discharge Under 11 U.S.C. § 727(d)

Plaintiff seeks revocation of Defendant's discharge under 11 U.S.C. § 727(d)(1) and (2). Under that provision:

> (d) On request of . . . a creditor . . . and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> >
> > (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

Plaintiff alleges Defendant obtained his discharge through fraud and that Plaintiff did not learn of the fraud until it received financial documents relating to the Audio Bible on April 2, 2012, two months before the Adversary proceeding was filed.

According to the Amended Complaint, Defendant's bankruptcy petition:

a. concealed the Audio Bible as an asset that was not scheduled;

b. concealed the Audio Bible as an asset because Defendant transferred the asset to another LLC;

c. did not list Plaintiff as a creditor;

d. did not list the "Agreement" on Schedule G;

e. did not list Plaintiff as "a creditor with FPG as co-debtor under Schedule H";

f. did not include income from the Audio Bible project on Schedule I; and

g. did not include income from the Audio Bible and fails to account for Plaintiff as a creditor on the Statement of Financial Affairs. (Am. Compl. ¶ 92)

Defendant argues that the Audio Bible was an asset of Falcon Picture Group, and not his personal asset. He contends that he does not now nor ever claimed a personal interest in the LLC's assets. Defendant also maintains that he did not schedule Plaintiff as a creditor because he does not owe any debt to it. He also states that he did not schedule the "Agreement" because he is not a party to it personally. Defendant also argues that he is unaware of any co-obligation with Plaintiff. Defendant also states that he received no income from the Audio Bible and so did not schedule or disclose any such income.

Plaintiff responds that its Amended Complaint sets out detailed facts demonstrating that Defendant failed to disclose certain assets, inaccurately represented his financial condition, and formed entities to divert income during the pendency of his bankruptcy. On consideration of the Motion to Dismiss, those allegations are considered to be true. Plaintiff's has thereby sufficiently alleged that Defendant failed to report or surrender "Audio Bible" assets or income and therefore hid them from the Chapter 7 Trustee. It is reasonable to infer that evidence on the necessary

elements of proof may be adduced at trial. *Sidney S. Arts Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994). Therefore, Count IV will not be dismissed.

### III. Plaintiff's Request to Impose a Constructive Trust

Defendant has moved to strike Plaintiff's request for relief seeking imposition of a constructive trust on profits of the "Audio Bible" project because, he argues, bankruptcy judges lack the authority to order such relief. A constructive trust is an equitable remedy that is imposed only in limited circumstances to prevent unjust enrichment. *Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 473 (7th Cir. 1997). The party seeking to impose a constructive trust must establish the following requirements: actual or constructive fraud, a breach of fiduciary duty, or duress, coercion or mistake. *Dunham v. Kisak*, No: 98-CV-0338-PER, 1998 U.S. Dist. LEXIS 22660, *16 (S.D. Ill. Dec. 16, 1998) (applying Illinois law). But even if authority might have existed for such relief pre-bankruptcy, it does not countenance a post-bankruptcy adjudication and Plaintiff's request for such relief will be stricken.

A constructive trust arises by operation of law. It is a device by which a court compels one who unfairly holds property to convey the property to the party to whom it justly belongs. *People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 191 (Ill. App. Ct. 1986). A constructive trust will not be imposed unless the claimant makes a showing of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake. *Bressner v. Ambroziak*, 379 F.3d 478, 483–84 (7th Cir. 2004). The elements of a constructive trust action are the existence of identifiable property to serve as the *res* upon which a trust can be imposed, and possession of that *res* or its product by the person who is to be charged as the constructive trustee. *Candy Club*, 501 N.E.2d at 191.

A constructive trust cannot be imposed post-bankruptcy, as any rights recognized in a bankruptcy must have been found under non-bankruptcy law to exist prior to filing of the bankruptcy petition. See *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation Inc.)*, 351 B.R. 529, 593 (Bankr. N.D. Ill. 2006); *In re Davenport*, 268 B.R. 159, 163 (Bankr. N.D. Ill. 2001) (citing *Stevens v. Century Furniture Co. (In re CL Furniture Galleries, Inc.)*, No. 95 C. 50103, 1995 U.S. Dist. LEXIS 18817, *8 (N.D. Ill. Dec. 20, 1995)). The Bankruptcy Code gives the trustee rights in property of the estate, the extent of those rights are governed by state law as

those rights existed when the bankruptcy was filed. *Butner v. U.S.*, 440 U.S. 48, 54 (1979). The interest of the bankruptcy trustee, which arose upon the bankruptcy filing, as a hypothetical lien creditor or bona fide purchaser of real property would be superior to that of any equitable interest that might be granted post-bankruptcy. *See Matter of Pubs, Inc. of Champaign*, 618 F.2d 432, 439 (7th Cir. 1980).

### CONCLUSION

For reasons stated above, Count III will be dismissed, the prayer for constructive trust will be stricken, and the Motion to Dismiss will otherwise be denied.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 27 day of November, 2012.